# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| **JENNIFER E. RUOTOLO, REBECCA BARTON, JOHAN TAPIA AND TIMOTHY BARTHOLOMEW, individually, and on behalf of all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**TWIN RIVER WORLDWIDE HOLDINGS, INC. n/k/a BALLY'S CORP., UTGR, INC. d/b/a TWIN RIVER LINCOLN CASINO RESORT and TWIN RIVER – TIVERTON, LLC d/b/a BALLY'S TIVERTON,**<br><br>    **Defendants.** | **Case No. 1:20-cv-00530-WES-PAS**<br>**[Consolidated Case]** |

## PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

NATURE OF THE CLAIMS AND PROCEDURAL HISTORY .................................................. 2

I.    The Nature of the Claims ................................................................................................. 2

      A.    Plaintiffs sought tip credit damages under the FLSA. ............................................ 3

      B.    Plaintiffs alleged that Defendants failed to include the value of the tip credit in the regular rate of pay when paying overtime. ............................................................ 5

      C.    Plaintiffs alleged that Defendants unlawfully rounded workers' timeclock entries. .................................................................................................................... 6

II.   Procedural History of the Litigation and Arm's-Length Settlement Negotiations ............. 6

SUMMARY OF KEY SETTLEMENT TERMS ........................................................................ 8

I.    The Settlement Class and Collective ............................................................................... 8

II.   The Settlement Benefits .................................................................................................. 8

III.  Proposed Notice Program, Settlement Structure, and Release ........................................ 9

IV.   Service Awards, Attorneys' Fees, and Expenses .......................................................... 10

ARGUMENT ........................................................................................................................ 11

I.    Standard of Review for Preliminary Approval of a Class Action Settlement .................. 11

II.   The Proposed Settlement is Fair, Reasonable, and Adequate ....................................... 12

      A.    Plaintiffs and their counsel have provided excellent representation to the class.. 12

      B.    The settlement was negotiated at arm's length. ................................................... 14

      C.    The relief provided to the class is adequate. ....................................................... 14

            1.    The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal. .................................................. 15

            2.    The relief provided to the class is adequate considering the effectiveness of distributing relief to the class. ................................... 16

3.    The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees. ......................................... 17

4.    The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e). ............................ 18

D.    The Settlement Agreement treats class members equitably to one another. ......... 18

III.    Class Certification for Settlement Purposes is Warranted. ................................. 18

A.    Numerosity is likely to be satisfied. ....................................................... 19

B.    Commonality is likely to be satisfied. .................................................... 19

C.    Typicality is likely to be satisfied. ........................................................ 20

D.    Adequacy is likely to be satisfied. ........................................................ 20

E.    Predominance is likely to be satisfied. ................................................... 21

F.    Superiority is likely to be satisfied. ....................................................... 22

IV.    The Proposed Class Notice Satisfies Rule 23. ................................................. 23

V.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel. .................................. 24

VI.    The Court Can Approve the Release of FLSA Claims as a Fair and Reasonable Resolution of a *Bona Fide* Dispute and Certify a Collective Action. .............................. 24

CONCLUSION ............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Mezcal, Inc.*,
  2019 WL 2550660 (D. Md. June 20, 2019) ............................................................ 4

*Adams v. Aztar Indiana Gaming Co., LLC*,
  2022 WL 593911 (S.D. Ind. Feb. 25, 2022) .................................................... passim

*Alves v. Main*,
  No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ..................................... 14

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591, 620, 117 S. Ct. 2231 (1997) .......................................................... 21, 23

*Bartakovits v. Wind Creek Bethlehem, LLC*,
  2022 WL 702300 (E.D. Pa. Mar. 7, 2022) ............................................................. 13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ...................................................................... 12

*Dillworth v. Case Farms Processing, Inc*.,
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ........................................................... 15

*Driver v. AppleIllinois, LLC*,
  917 F. Supp. 2d 793 (N.D. Ill. 2013) ............................................................... 4

*Garcia v. Palomino, Inc.*,
  738 F. Supp. 2d 1171 (D. Kan. 2010) ................................................................ 4

*Garcia v. Saigon Mkt. LLC*,
  2019 WL 4640260 (S.D.N.Y. Sept. 24, 2019) .......................................................... 5

*Garcia v. Tyson Foods, Inc.*,
  2012 WL 5985561 (D. Kan. Nov. 29, 2012) ........................................................... 13

*García-Rubiera v. Calderó*,
  *n*, 570 F.3d 443 (1st Cir. 2009) ................................................................... 19

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 14

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................... 16

*In re Oxford Health Plans*,
  191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................... 20

*James v. Boyd Gaming Corp.*,
    522 F.Supp.3d 892 (D. Kan. Mar. 2, 2021) ............................................................ 13

*Kauffman v. U-Haul Int'l, Inc.*,
    2019 WL 1785453 (E.D. Pa. Apr. 24, 2019) ........................................................ 15

*Kondash v. Citizens Bank, Nat'l Ass'n*,
    2020 WL 7641785 (D.R.I. Dec. 23, 2020) ........................................................... 17

*Larson v. Isle of Capri Casinos, Inc.*,
    2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) ..................................................... 13

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................................... 24

*MacMann v. Tropicana Ent., Inc.*,
    2021 WL 1105500 (E.D. Mo. Mar. 23, 2021) ..................................................... 13

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................................ 21

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012) ............................................................................... 21

*McKnight v. Honeywell Safety Prod. USA, Inc*.,
    No. CV 16-132 S, 2017 WL 3447894 (D.R.I. Aug. 11, 2017) ............................. 25

*Mehling v. N.Y. Life Ins. Co*.,
    248 F.R.D. 455 (E.D. Pa. 2006) ......................................................................... 15

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ............................................................................. 21

*No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
    540 F. Supp. 3d 182 (D.R.I. 2021) ..................................................................... 19

*Pasquale v. Tropicana Atl. City Corp*.,
    2022 WL 2816897 (D.N.J. July 19, 2022) .......................................................... 13

*Perez v. Lorraine Enterprises, Inc.*,
    769 F.3d 23 (1st Cir. 2014) ................................................................................... 4

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ............................................................................... 19

*Sesto v. Prospect CharterCARE, LLC*,
    2019 WL 2394251 (D.R.I. June 6, 2019) ........................................................... 12

*Sigui v. M&M Commc'ns, Inc.*,
    2015 WL 13717724 n.3  (D.R.I. Oct. 20, 2015) ........................................................ 5

*Singleton v. AT&T Mobility Servs., LLC*,
    146 F. Supp. 3d 258 (D. Mass. 2015) ...................................................................... 24

*Singleton v. First Student Mgmt. LLC*,
    No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..................... 15

*Southwood v. Milestone Mgmt. PA-Feasterville, LLC*,
    No. CV 19-2569, 2020 WL 5554396 (E.D. Pa. Sept. 15, 2020) ........................... 15

*Trombley v. Bank of Am. Corp.*,
    2011 WL 3740488 (D.R.I. Aug. 24, 2011) ............................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 20

*Walsh v. Gilbert Enterprises, Inc.*,
    2019 WL 1206885 (D.R.I. Mar. 14, 2019) ............................................................. 20

*Wintjen v. Denny's, Inc.*,
    2021 WL 734230 (W.D. Pa. Feb. 25, 2021) ............................................................. 4

**Statutes**

29 U.S.C. § 201 .................................................................................................................. 3

29 U.S.C. § 203 .................................................................................................................. 3

29 U.S.C. § 206 .................................................................................................................. 3

29 U.S.C. § 207 .................................................................................................................. 5

29 U.S.C. § 216 .................................................................................................................. 8

R.I.G.L. § 28-12-1 ............................................................................................................. 3

R.I.G.L. § 28-14-1 ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Fed. R. Evid. 408 ............................................................................................................. 12

**Regulations**

29 C.F.R. § 516.28 ................................................................................................ 4

29 C.F.R. § 531.59 ................................................................................................ 4

29 C.F.R. § 531.60 ................................................................................................ 5

29 C.F.R. § 785.48 ................................................................................................ 6

**Other Authorities**

Newberg on Class Actions ................................................................................ 12, 22

## **INTRODUCTION**

Plaintiffs worked as table games dealers and other hourly, non-exempt positions at either Bally's Twin River or Bally's Tiverton—the two casinos owned by Bally's in Rhode Island. Plaintiffs alleged that Defendants violated the Fair Labor Standards Act and Rhode Island wage and hour law at these casinos by: (1) failing to provide notice of the FLSA's tip credit requirements before paying less than $7.25 per hour to those workers for whom the casinos claimed a tip credit; (2) failing to include the tip credit in workers' regular rate of pay for overtime; and (3) unlawfully rounding workers' timeclock entries to the nearest quarter-hour.

After significant investigation, litigation, and consolidation of two cases, and a mediation with the Hon. Thomas J. Rueter (Ret., formerly United States Magistrate Judge of the Eastern District of Pennsylvania), Plaintiffs and Defendants have reached a $1,400,000 class and collective action settlement.  The $1,400,000 common fund represents around 70% of alleged unpaid wages covering approximately 2,500 workers.  The common fund will pay class and collective members, the cost of settlement administration, $5,000 service awards for the four named Plaintiffs, and Plaintiffs' counsel's attorneys' fees (one-third of the fund) plus expenses (no more than $15,000). After deducting these projected costs, the average settlement payment for workers with rounding and regular rate miscalculation claims is estimated to be approximately $58 while those workers with tip credit claims will receive an additional payment that is estimated to be $800 on average— meaningful amounts.  In exchange for these payments, class members agree to an appropriately narrow release of wage and hour claims.  This settlement is a fair, reasonable, and adequate resolution of a complicated wage and hour dispute at two casinos.

Pursuant to Rule 23(e)(1), an order directing notice to the class is justified where the Court concludes it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the class for purposes of settlement.  Accordingly, Plaintiffs request that the Court

permit the issuance of notice to the class of the proposed settlement, approve the form and manner of notice to the class and collective, appoint Plaintiffs' counsel as class counsel, appoint Plaintiffs as class representatives, and schedule a final approval hearing to determine whether the settlement should be finally approved.  In addition. and for the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e)(1), the settlement is likewise a fair and reasonable resolution of a bona fide dispute under the FLSA and should be approved and certified as a collective action.  Plaintiffs respectfully request the Court enter the parties' proposed order directing notice and preliminarily approving the settlement, which is attached as **Exhibit 4**.

## NATURE OF THE CLAIMS AND PROCEDURAL HISTORY

### I.    The Nature of the Claims

Plaintiffs worked as hourly employees at either Bally's Twin River or Bally's Tiverton. Like the named Plaintiffs, many of the putative class and collective members were paid a sub-minimum wage plus tips. meaning Defendants sought to claim a tip credit for those workers. FAC, Doc. 38 at ¶¶ 9-12, 61-63. For example, in February 2020, Defendants paid Plaintiff Ruotolo a direct cash wage of $6.70 per hour (plus tips from patrons at Bally's Twin River). *Id.* at ¶ 61.

Plaintiffs identified three wage and hour policies they alleged violated federal and Rhode Island law at Bally's Twin River and Bally's Tiverton: (1) Defendants had a policy of claiming a tip credit under federal law (*i.e.*, Defendants paid tipped employees less than the minimum wage and claimed a portion of their tips to offset their minimum wage obligations) but failed to satisfy the FLSA's tip credit notice requirements; (2) Defendants failed to include the value of the tip credit in the regular rate of pay when calculating overtime for employees paid pursuant to the tip credit; and (3) Defendants unlawfully rounded hourly employees' timeclock entries such that workers were denied wages for all hours worked. Doc. 38 at ¶¶ 25-67.

Plaintiffs asserted that Defendants Twin River Worldwide Holdings, Inc. n/k/a Bally's Corp ("Bally's"), UTGR, Inc. d/b/a Twin River Casino Hotel ("Twin River"), and Twin River-Tiverton, LLC ("Tiverton") jointly employed Plaintiffs and all other relevant workers at the Twin River and Tiverton casinos. Doc. 38 at ¶¶ 13-24.  Plaintiffs asserted six causes of action against Defendants—all tied to either the tip credit notice, regular rate calculation, or timeclock rounding issues—under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Rhode Island Minimum Wage Act ("RIMWA"), R.I.G.L. § 28-12-1, *et seq.*, and the Rhode Island Payment of Wages Act ("RIPWA"), R.I.G.L. § 28-14-1, *et seq. Id.* at ¶¶ 111-49.  Plaintiffs asserted these claims on behalf of putative classes and collectives of similarly situated tipped and hourly employees at both casinos. *Id.* at ¶¶ 69-77.  Defendants denied that Bally's jointly employed Plaintiffs or any class members and denied the merits of Plaintiffs' claims.

### A.    Plaintiffs sought tip credit damages under the FLSA.

The FLSA provides that every employer shall pay covered employees a minimum hourly wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).  Section 3(m) of the FLSA allows employers of tipped employees (*i.e.*, employees who customarily and regularly receive more than $30 a month in tips, *see* 29 U.S.C. § 203(t)), to pay a sub-minimum base hourly wage and claim a "tip credit" to make up the difference. *See* 29 U.S.C. § 203(m)(2).  But the FLSA only allows the tip credit to be claimed if, among other things, "such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m)(2)(A)(ii).  The notice requirements are:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, *i.e.:* The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit

3

shall not apply to any employee who has not been informed of these requirements
in this section.

29 C.F.R. § 531.59(b); *see also* 29 C.F.R. § 516.28(a)(3) ("The amount per hour which the

employer takes as a tip credit shall be reported to the employee in writing each time it is changed

from the amount per hour taken in the preceding week.").

It is not sufficient that employees simply and generally be aware of the FLSA's tip credit

provisions. Rather, Section 3(m) affirmatively requires employers to inform employees of the

provisions contained in Section 3(m), as more fully described in 29 C.F.R. § 531.59(b). *See Acosta*

*v. Mezcal, Inc.*, 2019 WL 2550660, at *7-8 (D. Md. June 20, 2019). The employer has the burden

to prove compliance with the FLSA's tip credit notice requirements. *See, e.g.*, *Driver v.*

*AppleIllinois, LLC,* 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013) ("The tip credit is an exception to

an employer's minimum wage obligation, and the employer has the burden of establishing its

entitlement to take it.").[1] If an employer has failed to meet any one of the five requirements set

out in Section 3(m) (and further clarified in 29 C.F.R. § 531.59(b)), its notice is deficient. *See*

*Wintjen v. Denny's, Inc*., 2021 WL 734230, at *4-6 (W.D. Pa. Feb. 25, 2021). Deficient notice

renders an employer ineligible to claim the tip credit and liable for the difference between its tipped

employees' sub-minimum base hourly wage and the federal minimum wage. *Id.*; *see also Garcia*

*v. Palomino, Inc.*, 738 F. Supp. 2d 1171, 1177–78 (D. Kan. 2010).

Here, Defendants identified several ways they claimed to provide notice of the FLSA's tip

credit requirements, including verbal conversations with managers and Department of Labor

posters. Plaintiffs allege these means are deficient, and that as a result, each class member is

---

[1] *Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) ("This notice provision is
strictly construed and normally requires that an employer take affirmative steps to inform affected
employees of the employer's intent to claim the tip credit. It is the employer's burden to show that
it satisfied all the requirements for tip-credit eligibility.").

entitled to the difference between their direct cash wage and $7.25 per hour.  The tip credit claim was far and away the primary driver of damages in this case, and, recognizing that, workers with tip credit damages are apportioned the lion's share of the net settlement fund.

### B.    Plaintiffs alleged that Defendants failed to include the value of the tip credit in the regular rate of pay when paying overtime.

The FLSA requires employers to pay employees at "a rate not less than one and one-half times the regular rate at which he is employed" for each hour worked over 40 in a workweek. 29 U.S.C. § 207(a).  Normally, this means an employee working an overtime hour must be paid at least 1.5 times $7.25 per hour (the federal minimum wage rate), or $10.87 per hour. 29 U.S.C. §§ 206, 207.  However, when an employer pays a tipped employee less than $7.25 per hour, "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer per hour." 29 C.F.R. § 531.60.

As the DOL's Wage and Hour Division Fact Sheet #15  explains: "[w]here the employer takes the tip credit, overtime is calculated on the full minimum wage, not the lower direct (or cash) wage payment. The employer may not take a larger FLSA 3(m) tip credit for an overtime hour than for a straight time hour."  Rhode Island law is construed consistent with the FLSA on this issue. *See, e.g., Sigui v. M&M Commc'ns, Inc.*, 2015 WL 13717724, at *6 n.3  (D.R.I. Oct. 20, 2015), *report and recommendation adopted*, 2016 WL 1255710 (D.R.I. Mar. 30, 2016) (evaluating FLSA and RIMWA claims simultaneously and based on the same standards).

This means (1) an employer who cannot claim a tip credit must pay its tipped employees, at least, $10.87 per hour for overtime (1.5 times the $7.25 minimum wage); and (2) an employer who can claim a tip credit must pay its tipped employees at least an overtime rate of $10.87 minus the value of the tip credit (*i.e.*, the difference between $7.25 and the employee's direct cash wage). *See Garcia v. Saigon Mkt. LLC*, 2019 WL 4640260, at *8 (S.D.N.Y. Sept. 24, 2019) ("Where a

valid tip credit has been taken, the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit. An employer who fails to comply with the applicable notice requirements under the FLSA … may not claim a tip credit to satisfy either its minimum wage or its overtime obligations.") (cleaned up).

In this case, Defendants used the sub-minimum wage as the regular rate of pay for tip credit workers and paid overtime at 1.5 times that rate. Plaintiffs alleged this violated the FLSA and Rhode Island law.

### C. Plaintiffs alleged that Defendants unlawfully rounded workers' timeclock entries.

Plaintiffs alleged that Defendants rounded Plaintiffs' and similarly situated workers' timeclock entries to the nearest quarter hour. For example, if an hourly worker clocked in at 7:53 a.m., that worker's time was rounded to 8:00 a.m. for payroll purposes. FAC, Doc. 38 at ¶ 28. Plaintiffs alleged that, in conjunction with Defendants' attendance and disciplinary policies, Defendants' timeclock rounding system unfairly benefitted Defendants and failed to compensate Plaintiffs and similarly situated workers for all hours worked in violation of the FLSA and Rhode Island law. *Id*. at ¶¶ 26-49; *see also* 29 C.F.R. § 785.48(b) (explaining timeclock rounding is only permissible where "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.")

## II. Procedural History of the Litigation and Arm's-Length Settlement Negotiations

Plaintiff Ruotolo filed the original Complaint in December 2020. Doc. 1. The parties then conducted a Rule 16 conference with Magistrate Judge Sullivan on April 5, 2021 and agreed to pertinent deadlines. The parties engaged in written discovery regarding Defendants' policies and procedures for providing notice of the tip credit to tipped workers, calculation of the regular rate of pay for tipped workers, and timeclock rounding. Ricke Decl. at ¶ 6.

In March 2022, Plaintiffs Barton, Tapia, and Bartholomew filed a related case against Defendant UTGR, Inc. *See Barton v. UTGR, Inc.*, Case No. 1:22-CV-00096 at Doc. 1.  Between March and July 2022, counsel for the *Ruotolo* Plaintiffs and *Barton* Plaintiffs met and conferred regarding consolidation of the two related cases with counsel for Defendants.  Ultimately, the parties filed an agreed motion to consolidate the *Barton* case into the first-filed *Ruotolo* case, which the Court ultimately granted. *See Barton*, Doc. 223.  Shortly thereafter, Plaintiffs filed a First Amended Complaint in the consolidated *Ruotolo* matter, which asserted the same claims on behalf of workers at Bally's Twin River and Tiverton. Ricke Decl. at ¶ 7.

During this time, approximately 250 workers at the two casino properties agreed to participate in the litigation by filing Consent to Join forms.  In light of the posture of the case and the critical mass of workers opting into the case, the parties agreed to mediate.  The parties entered into a tolling agreement to pause the running of the limitations period for putative collective members who had not yet opted into the case and engaged former United States Magistrate Judge Thomas J. Rueter (Ret.) of JAMS to mediate the case. Ricke Decl. at ¶ 8.

In advance of the mediation, Plaintiffs requested comprehensive wage and hour data from Defendants as well as certain information and documents relevant to Defendants' defenses. Defendants Twin River and Tiverton produced this data and information as requested.  Plaintiffs analyzed over 250,000 individual pay records to create a class and collective-wide damages model. In addition, the parties briefed damages, liability, and the likelihood of class and conditional collective certification in papers submitted to Judge Rueter and shared among counsel.  On July 26, 2022, the parties conducted an all-day mediation with Judge Rueter that resulted in the class and collective action settlement now before the Court. Ricke Decl. at ¶ 9.

## SUMMARY OF KEY SETTLEMENT TERMS

### I.    The Settlement Class and Collective

Plaintiffs ask the Court to certify the following settlement collective of workers at Bally's Twin River and Bally's Tiverton casinos pursuant to 29 U.S.C. § 216(b) (*see* Ex. 1, Settlement Agreement at ¶ 1.16, referred to as "FLSA Class Members" in the Settlement Agreement):

> Any and all current and former hourly employees employed by either UTGR or Tiverton during the period from July 1, 2019, through and including July 26, 2022 and who were negatively affected by the alleged tip credit, rounding and/or overtime calculation practices that are the subject of the Litigation.

Plaintiffs ask the Court to certify the following settlement class of workers at Bally's Twin River and Bally's Tiverton casinos pursuant to Rule 23 (*see* Ex. 1, Settlement Agreement at ¶ 1.29, referred to as "Rule 23 Class Members" in the Settlement Agreement):

> Any and all current and former hourly employees employed by either UTGR or Tiverton during the period from July 1, 2019, through and including July 26, 2022 and who were negatively affected by the alleged rounding and/or overtime calculation practices that are the subject of the Litigation.

There are approximately 2,500 employees covered by the settlement. Ricke Decl. at ¶ 15.

### II.    The Settlement Benefits

The settlement creates a $1,400,000 common fund to pay class and collective members, the cost of settlement administration, $5,000 service awards to each of the four named Plaintiffs, and Plaintiffs' counsel's attorneys' fees (one-third of the fund) and expenses (no more than $15,000). Ex. 1, Settlement Agreement at ¶ 3.1(A).  Based on Plaintiffs' counsel's calculations in connection with the mediation and based on Defendants' comprehensive wage and hour data, the $1,400,000 common fund represents approximately 70% of the alleged unpaid wages at issue. Ricke Decl. at ¶ 19

The net fund (less the costs described above) will be allocated as follows:

- $75,000 will be allocated evenly among all Rule 23 class members;

- $75,000 will be allocated evenly among FLSA collective members with rounding and regular rate of pay claims;

- The remaining portion of the net fund, which Plaintiffs' counsel estimate will be approximately $700,000 will be allocated proportionally among FLSA collective members with tip credit notice claims based on their proportional share of tip credit damages during the class period. It should be noted here that the tip credit damages primarily drove damages in the case and are, as a result, apportioned the largest share of the settlement.

Ex. 1, Settlement Agreement at ¶ 3.4.

Plaintiffs' counsel estimates that, after accounting for the projected cost of settlement administration, service awards, and Plaintiffs' counsel's fees and expenses, the estimated *per capita* settlement payment for rounding and miscalculated regular rate claims will be approximately $58. Similarly, the estimated average *per capita* settlement payment associated with the tip credit notice claim is projected to be approximately $800. Ricke Decl. at ¶ 18

## III.    Proposed Notice Program, Settlement Structure, and Release

Within 30 days of the Court's Order preliminarily approving the settlement, Defendants Twin River and Tiverton will provide the settlement administrator with the information necessary to calculate class and collective members' estimated settlement payments and their contact information. Ex. 1, Settlement Agreement at ¶ 2.5. Within 30 days of receiving the class and collective lists, the settlement administrator will send the notice of settlement to each class and collective member at their last known address. *Id*. Depending on whether they are members of the settlement class or collective (or both), class and collective members will receive either the Notice of Collective Action Settlement ("FLSA Notice," which is attached as **Exhibit 2**) or the Notice of Class and Collective Action Notice ("Rule 23 and FLSA Notice," which is attached as **Exhibit 3**). *Id*. The Notices will contain a Consent to Join Form, which must be returned within 60 days for workers to recover the portion of their settlement awards attributable to the FLSA. *Id*. That said,

9

any opt-in who has already filed a Consent to Join in the case (over 250 workers at this point) need not return a Consent to Join for payment of FLSA settlement amounts. *Id*.  Likewise, no claim form is required for Rule 23 settlement payments, which will be mailed automatically to all class members who do not opt out of the settlement. *Id*. at ¶ 2.6.

The notice documents explain in clear and easy to understand language the class and collective members' estimated payment, settlement structure, requested attorneys' fees and expenses, requested service awards, scope of the release, and the class member's options to participate, object, or request to be excluded. *See generally* Exhibits 2 and 3.  The Rule 23 and FLSA Notice explains that class members may opt out, object, and/or submit a Consent to Join Form within 60 days of the mailing of the notice as relevant to each notice form. Ex. 1, Settlement Agreement at ¶ 2.7.

In exchange for these settlement payments, Rule 23 class members who do not request exclusion will release any wage and hour claims against Defendants (except FLSA claims as described below) as more fully explained in the Settlement Agreement. *Id*. at ¶ 4.1(A).  Further, any FLSA collective members who return a Consent to Join form will release those same claims under the FLSA. *Id*. at ¶ 4.1(B).  The four named Plaintiffs agree to a general release in exchange for their service awards as more fully explained in the Settlement Agreement. *Id*. at ¶ 4.1(C).

After 90 days from the mailing of the settlement checks, the balance of any uncashed Rule 23 settlement checks will be provided to the Rhode Island unclaimed property fund to be held for each respective class member. *Id*. at ¶ 3.1(D).  The balance of any uncashed FLSA settlement checks will be returned to Defendants.

## IV.    Service Awards, Attorneys' Fees, and Expenses

The Settlement Agreement provides for $5,000 service awards for each of the four named Plaintiffs (totaling $20,000) to be paid from the settlement fund subject to the Court's approval.

*Id*. at ¶ 3.1(A).  In addition, and also subject to approval by the Court, the settlement fund will be used to pay Plaintiffs' counsel's attorneys' fees and expenses. *Id*. at ¶ 3.2.  Prior to the deadline for class members to object or opt out of the settlement, Plaintiffs' counsel will file a motion for attorneys' fees not to exceed one-third (33.33%) of the common fund ($466,620) plus reasonable costs up to $15,000. *Id*.  The settlement is not contingent on the Court awarding any specific amount to Plaintiffs' counsel as attorneys' fees. *Id*. at ¶3.2(B).

## ARGUMENT

### I.    Standard of Review for Preliminary Approval of a Class Action Settlement

A class action can only be settled with the court's approval. Fed. R. Civ. P. 23(e). Specifically, when a settlement agreement proposes to bind absent class members, the district court must direct notice to all class members if it finds that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

To approve the proposal under Rule 23(e)(2), the court must find that it is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

11

Fed. R. Civ. P. 23(e)(2).  Where, as here, the parties have sufficient information and data exchanged under Federal Rule of Evidence 408 to fairly evaluate their respective positions and have bargained at arm's-length with the assistance of a neutral mediator (in this case, a retired federal judge), "there is a presumption in favor of the settlement." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In addition, at "the preliminary approval stage … the Court need only determine whether the settlement 'appears to fall within the range of possible final approval.'" *Sesto v. Prospect CharterCARE, LLC*, 2019 WL 2394251, at *1 (D.R.I. June 6, 2019) (Smith, J.) (quoting *Trombley v. Bank of Am. Corp.*, 2011 WL 3740488, at *4 (D.R.I. Aug. 24, 2011)).  Indeed, "preliminary approval should not be confused for a final finding of reasonableness or fairness. The first step is merely to 'ascertain whether notice of the proposed settlement should be sent to the class ....'" *Id.* (quoting 4 William B. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2018)).

As explained below, Rule 23(e)'s factors show that this settlement falls within the range of reasonableness necessary to send notice to the settlement class.

## II.    The Proposed Settlement is Fair, Reasonable, and Adequate

Pursuant to Rule 23(e)(1)(B)(i), the Court may preliminarily approve a class action settlement if it "will likely be able to approve the proposal under Rule 23(e)(2)" which entails reviewing four enumerated factors.  Plaintiffs address each factor in turn.

### A.    Plaintiffs and their counsel have provided excellent representation to the class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes").  In this case, the adequacy factor is satisfied.  First, several of the firms representing Plaintiffs have devoted much of their practice over the last six years to prosecuting wage and hour

12

claims against casino operators having collectively prosecuted over 20 such cases.[2]    From this experience, Plaintiffs' counsel possess a deep knowledge of wage and hour practices in this industry, the type of evidence that typically exists, and how to value these claims. Ricke Decl. at ¶¶ 21-28.[3]

Second, through data and evidence produced for mediation, Plaintiffs' counsel have the information necessary to evaluate the merits of Plaintiffs' claims, including: the Defendants' arguments and legal authority as to how they claimed to provide notice of the tip credit to class members, Defendants' overtime calculation practices for tipped employees, Defendants' timeclock rounding practices for hourly workers, and Defendants' wage and hour data to calculate class and collective-wide damages (which entailed reviewing more than 250,000 wage records for many hundreds of class members). Ricke Decl. at ¶ 9; *see In re Global Crossing Sec. & ERISA*

---

[2] For example, Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. have obtained key rulings relevant to the issues in this case.  *See, e.g., James v. Boyd Gaming Corp.*, 522 F.Supp.3d 892, 908-14 (D. Kan. Mar. 2, 2021) (granting conditional certification of tip credit notice claim (among others) for workers across 13 casino properties); *Adams v. Aztar Indiana Gaming Co., LLC*, 2022 WL 593911, at *4-6, 8-12 (S.D. Ind. Feb. 25, 2022) (granting class and conditional certification of tip credit notice claims (among others) at Tropicana Evansville casino); *Pasquale v. Tropicana Atl. City Corp*., 2022 WL 2816897, at *5-6 (D.N.J. July 19, 2022) (granting conditional certification of tip credit notice and miscalculated regular rate claims for workers at Tropicana Atlantic City); *MacMann v. Tropicana Ent., Inc.,* 2021 WL 1105500, at *2 (E.D. Mo. Mar. 23, 2021) (granting conditional certification of trip credit notice, rounding, and miscalculated regular rate claims for workers at Lumiere casino in St. Louis); *Larson v. Isle of Capri Casinos, Inc.*, 2018 WL 6495074, at *17 (W.D. Mo. Dec. 10, 2018) (granting conditional and class certification of casino-wide tip credit notice claim at Isle of Capri casino in Kansas City).

[3] This experience has also been recognized by district courts around the country. *See, e.g.*, *Bartakovits v. Wind Creek Bethlehem, LLC*, 2022 WL 702300, at *3 (E.D. Pa. Mar. 7, 2022) (Leeson, J.) (finding that Stueve Siegel Hanson and McClelland Law Firm are "uniquely skilled and efficient in prosecuting casino wage and hour cases"); *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (Marten, J.) (awarding attorneys' fees to Stueve Siegel Hanson after a successful class action jury verdict and finding "plaintiffs' counsel's experience in wage-hour class actions has unmatched depth").

*Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). This factor weighs in favor of approval.

**B.    The settlement was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), Advisory Committee Notes. Here, this factor is likely to be satisfied because the settlement was achieved after an all-day, arm's-length mediations presided over by former United States Magistrate Judge Rueter of JAMS. Ricke Decl. at ¶¶ 8-9; *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). This factor weighs in favor of approval.

**C.    The relief provided to the class is adequate.**

Rule 23(e) charges the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

In this case, there is no doubt these factors point towards settlement approval. All of the factors identified by Rule 23(e)(2)(C) should be viewed in light of the meaningful monetary benefit this settlement confers on class members and that this settlement recovers approximately 70% of disputed wages. Relying on Defendants' comprehensive wage and hour data, Plaintiffs' counsel calculated class-wide tip credit damages of approximately $1,600,000, unpaid overtime damages

of approximately $11,000, and best-day rounding damages of approximately $370,000.  The $1,400,000 common fund represents approximately 70% of the unpaid wages alleged.  The projected *per capita* settlement check for rounding and miscalculated regular rate claims is $58 while those class members with tip credit notice claims are projected to recover an additional, on average, $800. Ricke Decl. at ¶¶ 18-19  That is a significant recovery in any wage case (and class actions generally). *See Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) (approving wage and hour settlement where "the proposed settlement amount is about 40% of the Plaintiffs' estimate.").[4]

### 1. The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.

Considering the costs, risks, and delay of trial and appeal, the proposed settlement satisfies Rule 23(e)(2)(C)(i).  As noted above, the settlement confers a significant monetary payment on class and collective members as the $1,400,000 common fund represents approximately 70% of the alleged unpaid wages.  This would be a strong recovery in any wage and hour case, but it is particularly so when weighed against the procedural and substantive risks in the case.

This case faced several risks absent settlement and, though Plaintiffs do not believe any would have prevented a recovery, they must still be factored into the risk analysis.   First,

---

[4] *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (approving wage and hour settlement where "Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages..."); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting courts that have approved settlements with even lower ratios); *Dillworth v. Case Farms Processing, Inc*., 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010); (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no doubt that the results achieved for the class members are exceptional."); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, No. CV 19-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving wage settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

Defendants would argue that Plaintiffs' claims were not suitable to class and collective treatment due to individual issues. Second, Defendants would argue that their timeclock rounding policy was lawful, which would require considerable discovery and could present individual issues. Third, Defendants would surely argue that they complied with the FLSA's notice requirements such that no tip credit damages were available. Plaintiffs' counsel has no doubt that Defendants would make other arguments as well, all of which would be costly and time-consuming to oppose.

Compared to proceeding in litigation, this settlement is *risk-free* and offers significant compensation to class members immediately. Ricke Decl. at ¶¶ 21-28; *see In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (recognizing "immediacy and certainty" of recovery as potential benefit to proposed settlement class). Obtaining a recovery for class members superior to what this settlement provides would take years of expensive and complex litigation. Plaintiffs would need to win class and collective certification, defeat class and collective decertification, defeat summary judgment, win at trial, and win on appeal. If Plaintiffs lost any issue at any time, class and collective members would almost certainly recover far less than what is offered through settlement or nothing at all. This factor weighs in favor of settlement approval.

### 2. The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. In this case, Rule 23 class members are not required to file any claim forms or take any affirmative steps to receive a settlement payment. Instead, unless Rule 23 class members request to be excluded, they will automatically be sent a check for their

settlement amount. Ex. 1, Settlement Agreement at ¶ 3.1.[5] Moreover, every individual covered by the settlement will receive an individualized notice that explains the settlement and specifies his or her anticipated settlement payment amount and options under the Settlement Agreement. *See generally* Exhibits 2 and 3 (the Notice forms). This factor weighs in favor of settlement approval.

### 3. The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. In this case, Plaintiffs' counsel will petition the Court for an award of attorneys' fees of up to one-third of the common fund ($466,620) plus reasonable expenses not to exceed $15,000. Ex. 1, Settlement Agreement at ¶ 3.2.

At the final approval stage, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees and expenses. However, the requested fee is in line with that awarded by Courts within the District of Rhode Island and First Circuit. *See, e.g.*, *Kondash v. Citizens Bank, Nat'l Ass'n*, 2020 WL 7641785, at *5 (D.R.I. Dec. 23, 2020), *report and recommendation adopted*, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (describing one-third fee in class action as "eminently reasonable" and collecting cases). Moreover, the Settlement Agreement makes clear that the settlement is not contingent on the Court awarding a particular fee. Ex. 1, Settlement Agreement at ¶ 3.2. The fee provision favors preliminary approval of the settlement.

---

[5] Plaintiffs note that members of the FLSA settlement collective do need to return a Consent to Join Form to receive their FLSA settlement allocations. However, that does not apply to any opt-in who has previously filed a Consent to Join the case. Ex. 1, Settlement Agreement at ¶ 2.6. That said, more than 250 FLSA collective members have already filed a Consent to Join the case and need not take any further steps to receive payment under the settlement. *Id.*

4.    **The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).**

The only agreement between the parties is the Settlement Agreement. Ricke Decl. at ¶ 11. This factor weighs in favor of settlement approval.

D.    **The Settlement Agreement treats class members equitably to one another.**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. In this case, the parties worked diligently to create an allocation formula that tracks the distribution of damages in the case while allowing for an efficient and effective distribution of the common fund. There is no question that damages in this case are primarily driven by tip credit damages, which is afforded approximately 80% of the net settlement fund. This allocation approximates the proportion of damages attributable to the tip credit notice claim. These payments—representing the lion's share of the settlement payments—are allocated based on each worker's proportional damages (*i.e.*, each worker's tip credit damages measured against all such tip credit damages). Ex. 1, Settlement Agreement at ¶ 3.4. Likewise, the timeclock rounding and miscalculated regular rate claims are allocated $150,000 in total from the net fund, which also approximates the proportion of damages attributable to those claims. And given the relatively modest nature of the rounding and miscalculated regular rate damages, those settlement payments are allocated evenly among class and collective members. In the parties' view, this is the most fair and efficient way to allocate the common fund. This factor weighs in favor of settlement approval.

III.    **Class Certification for Settlement Purposes is Warranted.**

Having determined that the Court "will likely be able to … approve the proposal under Rule 23(e)(2)," the Court can turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). As discussed

in more detail above, Plaintiffs ask the Court to certify the aforementioned class for settlement purposes only.

To obtain class certification, Plaintiffs must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). In addition, Plaintiffs must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs are likely to satisfy these requirements here.

### A.    Numerosity is likely to be satisfied.

The numerosity inquiry tests whether joinder of all class members in a single proceeding would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). Given that there are a few thousand class members, numerosity is satisfied. "As a general rule, if the named plaintiffs demonstrate 'that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 198 (D.R.I. 2021) (Smith, J.) (quoting *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009)).

### B.    Commonality is likely to be satisfied.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). Here, the class members' claims share a common factual core, as they each suffered the same alleged injury—failure to pay all wages owed under federal and state law.

Class members share the common legal and factual issue of whether Defendants' casino-wide methods of providing tip credit notice, calculating overtime for tipped employees, and

timeclock rounding violated federal and Rhode Island law. Comparable claims have been routinely certified as class actions, including in the casino context. *Adams*, 587 F.Supp.3d 753, at 765-69 (certifying classes of casino workers related to tip credit notice, timeclock rounding, and miscalculated regular rate claims under Indiana's analog to RIMWA and RIPWA). Commonality is likely to be satisfied.

### C.    Typicality is likely to be satisfied.

To ensure that the class representatives "have the incentive to prove all the elements of the cause of action" that would otherwise have been individually brought by class members, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *In re Oxford Health Plans*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). As this Court has noted, typicality can be satisfied in the employment context when employees were subject to the same challenged practices and policies. *Walsh v. Gilbert Enterprises, Inc.*, 2019 WL 1206885, at *4 (D.R.I. Mar. 14, 2019) (Smith, J.).

Here, Plaintiffs' litigation goals completely align with those of class members. Like each class member, Plaintiffs worked as hourly, non-exempt employees at Bally's Twin River or Bally's Tiverton. Plaintiffs assert the same tip credit notice, timeclock rounding, and miscalculated regular rate claims as class and collective members. Plaintiffs and class members share common claims, premised on common facts, and will be entitled to common remedies under federal and state law. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("Typicality . . . 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (citation omitted). Typicality is satisfied.

### D.    Adequacy is likely to be satisfied.

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties

20

and the class they seek to represent." *Amchem*, 521 U.S. at 625; *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).  No such conflict of interest exists or will arise in this case, as Plaintiffs and the workers they seek to represent allege the same claims under federal and state law and Plaintiffs were motivated to (and have) maximized the recovery for the class. *See, e.g., Adams*, 2022 WL 593911, at *10 (granting class certification in casino wage and hour case because plaintiff "has a sufficient stake in the outcome and no antagonistic or conflicting claims with other class members.").

Further, Plaintiffs have retained lawyers who are qualified and experienced in wage and hour class actions against casinos. *Adams*, 2022 WL 593911, at *10 (finding adequacy satisfied in part because Stueve Siegel Hanson and McClelland Law Firm are "experienced in wage and hour class actions against casinos").  The adequacy requirement is satisfied.

### E.    Predominance is likely to be satisfied.

Common questions predominate if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This requirement is satisfied "if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, predominance is satisfied because the success or failure of Plaintiffs' challenge to Defendants' common use of the tip credit without an adequate tip credit notice policy, common timeclock rounding policy, and common method of calculating tip credit employees' regular rate of pay will require the Court to apply common legal principles to common facts.  Other district courts have found predominance satisfied in tip credit notice class actions under similar state laws. *Adams*, 587 F.Supp.3d 753, 768 (finding predominance in casino wage and hour class action). The predominance requirement is satisfied.

**F.      Superiority is likely to be satisfied.**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). As discussed below, each of the superiority factors set out in Rule 23(b)(3) favors class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. Newberg on Class Actions §4:69. Here, more than 250 workers have already opted into the case indicating their desire to participate in representative litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor weighs in favor of approval because this consolidated case is the only case challenging these practices at Defendants' two Rhode Island casino properties.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, concentration of all claims in this Court is both efficient and desirable because all class members worked at either Bally's Twin River or Tiverton, both of which are located within this judicial forum.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997). The superiority requirement is satisfied.

IV.    **The Proposed Class Notice Satisfies Rule 23.**

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. Pursuant to the Settlement Agreement, for each class member, Defendants will provide the Settlement Administrator with the name, last known address, social security number, and identify to which collectives and classes they belong and their proportional share of the tip credit settlement allocation (if applicable). Ex. 1, Settlement Areement at ¶ 2.5. The administrator will mail each class member an individualized notice. *Id.* If the post office returns any notice, the Settlement Administrator will work diligently to obtain an updated address and remail the notice. *Id.* Class members will have 60 days from the mailing of the notice to exclude themselves from or object to the settlement. *Id.* at ¶ 54.

Moreover, the notice forms are written in clear language and accurately describe the nature of the action, the settlement, the scope of the release, and the process class members must follow to exclude themselves from, object to, and receive payment from the settlement. *See generally* Exhibits 2 and 3. Importantly, each notice packet informs each class member of his or her

23

anticipated award and an explanation of their rights and options under the Settlement Agreement. *Id.*  This detailed notice weighs in favor of settlement approval.

## V.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

When a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class.  Fed. R. Civ. P. 23(g)(1).  Here, Plaintiffs' counsel respectfully ask the Court to appoint them class counsel.  Each firm is comprised of experienced wage and hour and class action lawyers. *See, e.g.*, *Adams*, 587 F.Supp.3d 753, 767-68 (noting that Stueve Siegel Hanson and McClelland Law Firm are "experienced in wage and hour class actions against casinos").

## VI.    The Court Can Approve the Release of FLSA Claims as a Fair and Reasonable Resolution of a *Bona Fide* Dispute and Certify a Collective Action.

District Courts within the First Circuit approve FLSA settlements where they represent a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e), the Court can approve the FLSA release for class and collective members who previously have submitted or will (in response to notice of the settlement) submit a Consent to Join Form and negotiate their settlement checks.  In addition, for the same reasons that class certification is appropriate under Rule 23(a) and (b)(3), conditional collective certification is likewise appropriate. *McKnight v. Honeywell Safety Prod. USA, Inc.*, No. CV 16-132 S, 2017 WL

3447894, at *6 (D.R.I. Aug. 11, 2017) (Smith, J.) (adopting Report and Recommendation to conditionally certify collective because workers were "similarly situated").

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court grant the unopposed motion to direct class notice and preliminarily approve class action settlement and the relief prayed for therein, enter the proposed order (attached as Exhibit 4) including setting a final fairness hearing, and for any other relief the Court deems appropriate under the circumstances.

Dated:  November 14, 2022                    Respectfully submitted,

**FORMISANO AND COMPANY**
V. Edward Formisano (#5512)
100 Midway Place, Suite 1
Cranston, RI 02920
Telephone:    (401) 400-4402
Facsimile:    (401) 944-9695
edf@formisanoandcompany.com

**STUEVE SIEGEL HANSON LLP**
*/s/ Alexander T. Ricke*
George A. Hanson, MO Bar #43450, *pro hac vice*
Alexander T. Ricke, MO Bar #65132, *pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM**
*A Professional Corporation*
Ryan L. McClelland, MO Bar #59343, *pro hac vice*
Michael J. Rahmberg, MO Bar #66979, *pro hac vice*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri  64068-1170
Telephone:    (816) 781-0002
Facsimile:    (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

**MULLER LAW, LLC**
Chip Muller (#7686)
Nancy Sheinberg (#7660)
47 Wood Ave.
Barrington, RI 02806
(401) 256-5171
chip@mullerlaw.com
nancy@mullerlaw.com

**STEFFANS LEGAL PLLC**
Benjamin Knox Steffans, *pro hac vice*
10 Wendell Ave. Ext. No. 208
Pittsfield, MA 01201
(413) 418-4176
bsteffans@steffanslegal.com

**CONNOR & MORNEAU LLP**
Jeffrey S. Morneau, *pro hac vice*
273 State Street, 2nd Floor
Springfield, MA 01103
(413) 455-1740
jmorneau@cmolawyers.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

*/s/ Alexander T. Ricke*